**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DEVELOPERS SURETY & INDEMNITY COMPANY, an Iowa Corporation,** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) | No. 05 C 4045 |
| ) | |
| **BARTLETT BITUMINOUS ASPHALT, LLC,** ) **d/b/a BBA, LLC, an Illinois Limited Liability** ) **Company, DONATO P. CONSOLE, an** ) **Individual, PETER T. CONSOLE, an** ) **Individual, ROSANNA CONSOLE, an** ) **Individual, and ANTHONY P. CONSOLE, an** ) **Individual,** ) ) | Judge Nan R. Nolan |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Developers Surety & Indemnity Company ("Developers") filed this diversity suit against Defendants Bartlett Bituminous Asphalt, LLC, d/b/a BBA, LLC ("BBA"), Donato P. Console, Peter T. Console, Rosanna Console, and Anthony P. Console, seeking indemnification for losses sustained in connection with certain projects on which Developers issued performance and payment (i.e., surety) bonds. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Developers has now filed a motion for summary judgment on its claims. For the reasons set forth here, the motion is granted.

## BACKGROUND

The facts of this case are largely undisputed. Developers is an Iowa corporation with its principal place of business in Irvine, California. (Pl. Facts ¶ 1.) BBA is an Illinois Limited Liability Company with its principal place of business in Elmhurst, Illinois. Donato Console is an Illinois

resident living in DuPage County. Peter Console, Rosanna Console and Anthony Console, also residents of Illinois, live in Cook County.[1] (*Id.* ¶¶ 2-6.)

### A. The Indemnity Agreement

On December 27, 2002, Defendants executed an Indemnity Agreement ("Agreement") stating that each of them would be jointly and severally liable to Developers for certain liabilities and expenses incurred in connection with any surety bonds that Developers issued on Defendants' behalf. (*Id.* ¶ 30; Ex. 2 to Pl. Facts.) Specifically, Defendants agreed to indemnify Developers for:

> 1.2 Liability incurred or expenses paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to Principal's[2] nonperformance of an Obligation[3] or any other matter covered by a Bond.
>
> 1.3 Liability incurred or expenses paid in connection with claims, suits or judgments relating to an Obligation or a Bond, including, without limitation, attorneys' fees and all legal expenses, and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses.
>
> 1.4 Liability incurred or expenses paid in procuring or attempting to procure a release of liability under or exoneration of a Bond.
>
> 1.5 Liability incurred or expenses paid in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement, an Obligation or a Bond.
>
> 1.6. Liability incurred or demands, claims, damages or expenses caused by the failure of Principal or Indemnitor to perform or comply with any or all of the covenants and conditions of this Agreement, including, without limitation, the costs and expenses of Surety in connection with the enforcement of any of Principal's or Indemnitor's covenants and conditions contained herein or in connection with the exercise of any remedy of Surety hereunder.

---

[1] The parties do not indicate the nature of the individual Defendants' relationships with each other.

[2] Defendants are each Principals and Indemnitors under the Agreement. (Ex. 2 to Pl. Facts, at 1.)

[3] An "Obligation" is defined as "[a]ny agreement executed, undertaking made, statutory or other duty assumed or liability incurred by Principal, the performance or discharge of which is guaranteed by Surety pursuant to a Bond." (Ex. 2 to Pl. Facts, at 1.)

(*Id.* ¶ 31; Ex. 2 to Pl. Facts, at 1-2.)

In reliance on this Agreement, Developers issued surety bonds on Defendants' behalf for seven projects: the Woodridge Project; the Ashland Avenue Project; the Palwaukee Airport Project; the Forest Glen Project; the Village of Westmont Project; the Brach/Brodie Site Work Project; and the Village of Woodridge Project.

### B. The Woodridge Project

On June 2, 2003, BBA entered into a contract with the State of Illinois Department of Transportation ("IDOT") for a project known as Contract No. 83677, Village of Woodridge (the "Woodridge Project"). (*Id.* ¶ 11.) The stated contract price was $589,202.60. BBA asked Developers to furnish IDOT with surety bonds for the project in accordance with Illinois state law and the terms of the contract. Developers issued the requested performance and payment bonds, each of which bore the number 888375P, contained the penal sum of $589,202.60, named BBA as principal, and named the State of Illinois as Obligee. (*Id.* ¶¶ 11, 12.)

Developers claims to have incurred $7,281.96 in expenses as a result of its investigation into claims asserted under the Woodridge Project. According to Daniel J. Berge, Developers' Senior Claims Counsel, Developers paid its consultant, Robert L. Dunn, the sum of $2,768.22 between August 24, 2005 and August 29, 2007 for consultation services relating to claims made on the Woodridge Project. (Pl. Supp. Facts ¶ 13; Berge Aff., Ex. A to Pl. Supp. Facts, ¶ 8 and Group Exhibit 1.) Developers also paid legal fees to the law firm of Riordan, Donnelly, Lipinski & McKee, Ltd. ("RDLM") in the amount of $4,513.74 between March 18, 2005 and June 18, 2007. (*Id.* ¶ 14; Berge Aff. ¶ 9 and Group Exhibit 1.)

At some point, IDOT paid Developers $6,303.34 on the bond. (Pl. Facts ¶ 29; Moore Aff. ¶ 9; Pl. Supp. Facts ¶ 32.) Thus, it appears that Developers is still owed $978.62 in expenses on the Woodridge Project Bond ($7,281.96 - $6,303.34 = $978.62).

3

### C. The Ashland Avenue Project

Also on June 2, 2003, BBA entered into a contract with IDOT in the amount of $742,750.25 for a second project known as Contract No. 62394, Ashland Avenue (the "Ashland Avenue Project"). (Pl. Facts ¶ 15.) At BBA's request, Developers issued performance and payment bonds for the project in accordance with Illinois state law and the terms of the contract. Each bond bore the number 888376P, contained the penal sum of $742,750.25, named BBA as principal, and named the State of Illinois as Obligee. (*Id.* ¶¶ 15, 16.)

Developers claims that it has sustained losses and expenses on the Ashland Avenue Bond in the amount of $9,518.25. This includes $3,500 paid to Metro Environmental Contractors, Inc. on October 31, 2006 for its bond claim; $1,912.50 paid to Dunn between August 24, 2005 and August 29, 2007 for consulting services relating to claims made on the Ashland Avenue Project Bond; and $4,105.75 paid to RDLM between June 20, 2005 and February 20, 2007 for legal services rendered in connection with the bond. (Pl. Supp. Facts ¶¶ 17-19; Berge Aff. ¶¶ 10-12 and Group Exhibit 2.)

### D. The Forest Glen Project

On July 15, 2003, BBA entered into a contract with the City of Chicago, Department of Transportation ("CDOT") for a project known as Forest Glen Avenue over Chicago River (the "Forest Glen Project"). The stated contract price was $1,944,499.44. Developers issued performance and payment bonds for the project, as requested by BBA and in accordance with Illinois state law and the terms of the contract. Each bond bore the number 88488P, contained the penal sum of $1,944,499.44, named BBA as principal, and named the City of Chicago as Obligee. (Pl. Facts ¶¶ 23, 24.)

Developers claims that it has sustained losses and incurred expenses on the Forest Glen Bond in the amount of $77,809.65. Specifically, Developers paid $25,996.19 to Area Equipment, Inc. on October 12, 2005 to settle its bond claim. (Pl. Supp. Facts ¶ 27; Berge Aff. ¶ 16 and Group

Exhibit 4.)  Developers also paid Dunn $4,431.31 between August 24, 2005 and August 29, 2007 for consulting services relating to claims made on the bond; and paid RDLM $46,798.15 between September 20, 2004 and January 24, 2008 for legal services rendered in connection with the bond. Finally, Developers paid Edward R. LeFevour and Associates $584 for investigative services relating to the bond.  (*Id.* ¶¶ 28-30; Berge Aff. ¶¶ 17-19 and Group Exhibit 4.)

### E. The Palwaukee Airport Project

On October 8, 2003, BBA entered into a third contract with IDOT for a project known as the Palwaukee Airport Project.  The stated contract price was $1,478,248.25, and Developers issued performance and payment bonds in that amount in accordance with Illinois state law and the terms of the contract.  Each bond bore the number 888800P, contained the penal sum of $1,478,248.25, named BBA as principal, and named the State of Illinois as Obligee.  (Pl. Facts ¶¶ 19, 20.)

Developers claims that it has sustained $230,889.68 in losses and incurred $10,397.52 in expenses and legal fees on the Palwaukee Airport Bond, for a total of $241,287.20.  (*Id.* ¶¶ 21, 22; Moore Aff. of 7/31/07, ¶ 8c; Pl. Supp. Facts ¶¶ 22-24; Berge Aff. ¶¶ 13-15 and Group Exhibit 3.) Specifically, Developers paid $230,889.68 to settle bond claims as follows:

a. $706.39 to Maintenance Coatings Company on September 14, 2005.

b. $51,171.25 to J. Jasso Trucking Company on October 3, 2005.

c. $154,091.31 to Aldridge Electric, Inc. on October 13, 2005.

d. $10,715.25 to Block Heavy & Highway Products on November 1, 2005.

e. $14,205.48 to Aldridge Electric, Inc. on August 1, 2006.

(Pl. Supp. Facts ¶ 22.)  Developers also paid Dunn $1,725.02 between August 24, 2005 and August 29, 2007 for consulting services relating to the Palwaukee Airport Bond; and paid RDLM $8,672.50 between February 14, 2005 and October 23, 2006 for legal services rendered in connection with the bond.  (*Id.* ¶¶ 23, 24; Berge Aff. ¶¶ 14, 15 and Group Exhibit 3.)

### F. Additional Projects

5

Developers claims that it issued three additional surety bonds on Defendants' behalf: (1) Payment Bond No. 888141P for a project known as the Village of Westmont Project; (2) Payment Bond No. 888470P for a project known as the Brach/Brodie Site Work Project; and (3) Payment Bond No. 888146P for a project known as the Village of Woodridge Project. (Pl. Facts ¶ 27.) Developers claims to have incurred $378 in expense payments on the Village of Westmont Project Bond; $420 in expense payments on the Brach/Brodie Site Work Project Bond; and $105 in expense payments on the Village of Woodridge Project Bond. (*Id.*; Moore Aff. of 7/31/07, ¶ 8e-g.) Developers has not, however, provided any supporting documentation for these expenses.

### G. Developers' Lawsuit

Pursuant to the written terms of the Indemnity Agreement, Developers demanded that BBA comply with its obligations under the Agreement, and indemnify and exonerate Developers from and against any and all liability for the losses and expenses it sustained on its bonds. Defendants deny that Developers has sustained any such losses, prompting Developers to file this lawsuit on July 13, 2005. Developers now seeks summary judgment on all its claims.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the evidence in a light most favorable to the non-moving party. *Lunini v. Grayeb*, 395 F.3d 761, 769 n.4 (7th Cir. 2005). The court's function in ruling on a motion for summary judgment is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Where factual matters are in dispute, the court is required to credit the non-movants' version of events. *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 802 (7th Cir.

2000). The non-moving parties must do more, however, than demonstrate a factual dispute; they must offer evidence sufficient to support a verdict in their favor. *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).

The parties agree that the Indemnity Agreement is valid and binding on Defendants. (Def. Mem., at 2.) The only issue is whether Developers has in fact sustained losses and damages on its bonds and, if so, in what amount. Developers claims it is owed $329,593.72 plus attorneys' fees and costs incurred in bringing this motion. Defendants insist that Developers has not provided sufficient evidence of its alleged losses and, alternatively, that there is a genuine issue of fact as to whether Developers ultimately will incur any loss or damage on the bonds.

**B.     Analysis**

As a preliminary matter, the court notes that in the original motion for summary judgment, Developers submitted the affidavit of Susan M. Moore, Developers' Senior Vice-President of Claims, without any supporting documentation for the amounts claimed as expenses and losses. Defendants moved to strike this affidavit as deficient, but Developers has now submitted a fully supported affidavit from Daniel J. Berge that parallels the Moore affidavit. The motion to strike the Moore affidavit is therefore denied as moot.

Defendants have not responded to the Berge affidavit or to Developers' supplemental Rule 56 statement of facts. All of those facts are therefore deemed admitted. *See Wormely v. Ponce*, No. 06 C 2965, 2007 WL 4162810, at *1 (N.D. Ill. Nov. 19, 2007) ("Failure of an opposing party to respond properly will result in the court deeming admitted the statements of fact set forth in the moving party's 56.1(a)(3) submission.") As a result, Developers has more than adequately established its claimed losses and expenses relating to the bonds.[4]

---

[4] The exception is the $903 allegedly due on the Village of Westmont Project, the Brach/Brodie Site Work Project, and the Village of Woodridge Project. (Pl. Facts ¶ 27.) Defendants have not provided any supporting documentation for these projects, and apparently have abandoned these claims.

Defendants disagree, arguing that "there are amounts due to BBA in connection with each of the projects that exceed the amount of plaintiff's claimed loss and damages and which, when collected, will make plaintiff whole." (Def. Resp., at 4.) In support of this position, Defendants cite the affidavit of Donato Console, who states that BBA is still owed the following amounts on the projects:

| Project | Amount Due |
|---|---|
| Woodridge Project | $53,645.06 |
| Ashland Avenue Project | $316,386.55 |
| Forest Glen Project | $268,014.18 |
| Total: | $638,045.79 |

(Console Aff. ¶¶ 3, 4, 6.) Console concedes that there is a negative balance of $82,343.95 due on the Palwaukee Airport Project. (*Id.* ¶ 5.) Defendants thus claim that BBA is owed a total of $555,701.84 ($638,045.79 - $82,343.95), which "will produce funds sufficient to reimburse plaintiff for the amounts that it claims to have expended and will result in no loss or damages to plaintiff." (Def. Resp., at 4-5; Console Aff. ¶ 7.)

The Console affidavit suffers from the same deficiencies as the Moore affidavit. Specifically, Console has provided only a summary relating to each project, which he "prepared from the books and records of BBA." (Console Aff. ¶¶ 3-6 and Exs. 1-4.) Defendants have not provided any of the underlying documentation proving that these amounts are actually due and owing. Indeed, Developers has submitted contrary affidavits from James E. Sterr, IDOT's Chief of the Bureau of Claims, and Mohammed Pakshir, CDOT's Manager of Finance, stating that no sums are due to BBA on the Woodridge, Ashland Avenue or Forest Glen Projects because of BBA's failure to meet the terms and conditions of its contracts. (Exs. B and C to Pl. Reply.) Nor is it clear that payments Defendants potentially may receive in the future have any bearing on their obligation to reimburse Developers for the losses and expenses it has incurred now. In light of the uncontested Berge

affidavit, Defendants' unsupported claim of payments owed is inadequate to establish a genuine issue of fact.

## **CONCLUSION**

For the reasons stated above, Developers' Motion for Summary Judgment [Doc. 45] is granted, and the clerk is directed to enter judgment in favor of Plaintiff in the amount of $329,593.72. Defendants' Motion to Strike [Doc. 50] is denied as moot.

ENTER:

Dated: February 27, 2008 _____
NAN R. NOLAN
United States Magistrate Judge